UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
TRACEY ANDRETTA,

        Plaintiff,

    - against -

NANCY A. BERRYHILL, ACTING COMMISSIONER
OF SOCIAL SECURITY,

        Defendant.
------------------------------------------------------------------X
ROSLYNN R. MAUSKOPF, Chief United States District Judge.

**MEMORANDUM AND ORDER**
18-CV-3012 (RRM)

    Plaintiff Tracey Andretta brings this action against the Commissioner of Social Security ("the Commissioner") pursuant to 42 U.S.C. § 405(g).  Andretta appeals the Commissioner's final decision determining that she was not eligible for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act ("the Act"), as she is not disabled within the meaning of the Act.  Andretta alleges that she is disabled under the Act and is thus entitled to receive the aforementioned benefits.

    Before the Court is Andretta's motion for judgment on the pleadings and the Commissioner's cross-motion for judgment on the pleadings.  The Court finds that the administrative law judge erred in failing to properly develop the record in this matter.  Therefore, the Commissioner's motion is DENIED, Andretta's motion is GRANTED, and the case is remanded for further proceedings consistent with this Order.

## BACKGROUND

### I. Andretta's History

    On March 16, 2015, Andretta filed an application for SSI benefits alleging that she was disabled due to depression, mental illness, and anxiety.  (Complaint ("Compl.") (Doc. No. 1) at

1; Transcript ("Tr.") (Doc. No. 20) at 130–33, 156.)  The alleged onset of her disability was March 18, 2009.  (Tr. at 130.)  On March 21, 2015, the Social Security Administration ("SSA") issued a denial of disability insurance benefits ("DIB") pursuant to Tile II of the Act, as Andretta had not earned sufficient quarters of coverage to qualify for DIB.  (*Id.* at 75–77.)  One month later, on April 21, 2015, the SSA denied Andretta's application for SSI on the basis that she was not disabled.  (*Id.* at 78–82.)  On May 22, 2015, Andretta requested a hearing before an Administrative Law Judge ("ALJ").  (*Id.* at 85–86.)  On December 19, 2016, Andretta appeared pro se and testified before ALJ Laureen Penn.  (*Id.* at 39–65.)  By a decision dated May 2, 2017, ALJ Penn determined that Andretta was not disabled within the meaning of the Act and was therefore not entitled to benefits.  (*Id.* at 12–29.)

Andretta appealed ALJ Penn's decision to the Appeals Council.  (*Id.* at 128–29.)  Andretta filed evidence with her appeal including medical records and medical opinions rendered by sources who treated her in the relevant time period.  (*Id.* at 9, 33–38.)  On January 16, 2018, the Appeals Council denied Andretta's request for review, rendering ALJ Penn's determination the final decision of the Commissioner.  (*Id.* at 1–5.)  In its denial, the Appeals Council noted that it had not considered the additional evidence submitted.  (*Id.* at 2.)  On May 22, 2018, Andretta filed the instant action.  (*See generally* Compl.)

## II.   ALJ Hearing

On May 15, 2019, the parties filed a joint stipulation of facts.  (Joint Stipulation of Facts (Doc. No. 23).)  The facts set forth therein are hereby incorporated into this decision by reference.  Because the Court incorporates these facts, only additional facts that are pertinent to this decision will be addressed.

Andretta appeared *pro se* for the hearing and advised ALJ Penn that she had attempted to obtain a representative through HRA.[1] (Tr. at 41–42.) ALJ Penn advised Andretta that she could adjourn the hearing to give her an opportunity to obtain a representative, but it would be at least a month, or possibly more, before the hearing would be rescheduled. (*Id.*) Andretta agreed to proceed without a representative to avoid further delay. (*Id.* at 42–43.)

Andretta testified that she had received medical treatment at Southside Hospital in 2009. (*Id.* at 45.) She also received treatment from Canarsie Aware, and had previously identified in forms filed with the SSA that Canarsie Aware was located at 1285 Rockaway Avenue in Brooklyn, New York. (*Id.* at 45–46.) She saw a psychiatrist every month and had seen her psychiatrist a few days prior to the hearing. (*Id.* at 46.) Andretta testified that she had attended school up to eleventh grade and had been enrolled in special education. (*Id.* at 47.) According to her testimony, she was taking two medications: Pristiq for bipolar disorder, and Paliperdone[2] for schizophrenia. (*Id.* at 52.) Andretta testified that she switched therapists when Canarsie Aware closed down and was now receiving treatment at Institute for Community Living ("ICL"), located next door to Canarsie Aware.[3] (*Id.* at 53.) She had also been treated at Canarsie Multi Service Center and Staten Island University's methadone clinic. (*Id.* at 60–62.) Finally, she was treated while incarcerated at Riker's Island Prison from February 2014 through July 2014. (*Id.* at 62–63.)

---

[1] HRA, Human Resources Agency, is a governmental department of the City of New York which administers public assistance, food stamps, and medication, and provides free legal representation to recipients of public assistance who have applied for or intend to apply for social security benefits.

[2] Paliperidone (a/k/a Invega) is a powerful anti-psychotic medication used to treat schizophrenia or a schizoaffective disorder. *See Paliperidone (Invega)*, NATIONAL ALLIANCE ON MENTAL ILLNESS, https://www.nami.org/Learn-More/Treatment/Mental-Health-Medications/Paliperidone-(Invega) (last visited March 19, 2020).

[3] ICL is one of the largest non-profit human-services providers in New York City. It provides housing, advocacy and counseling services to more than 10,000 individuals annually. *Institute for Community Living*, NYC DEPARTMENT OF HOMELESS SERVICES, https://www1.nyc.gov/site/dhs/shelter/providers/icl.page (last visited March 19, 2020).

ALJ Penn advised Andretta that on the day of the hearing the only medical evidence from treating sources in the file were Canarsie Aware's records from September and October of 2014. (*Id.* at 59.)  ALJ Penn advised Andretta that she would request her medical records.  (*Id.* at 63–64.)  Andretta asked if she had to obtain and submit any of her medical records herself and ALJ Penn stated that Andretta did not need to obtain her medical records, as ALJ Penn would do so. (*Id.*)

There is nothing in the record indicating ALJ Penn requested the records from Southside Hospital, Canarsie Multi Service Center, or Staten Island University Hospital's methadone clinic.  Furthermore, the record does not indicate that ALJ Penn requested Andretta's educational records, or any additional records from Canarsie Aware or ICL.  Subsequent to the hearing, ALJ Penn requested and obtained medical records from Riker's Island Prison.  (*Id.* at 242–685.)

### III.   ALJ Penn's Decision

ALJ Penn used the five-step sequential process to determine whether the claimant is disabled as mandated by 20 C.F.R. § 416.920(a).  (*Id.* at 16.)  At step one, ALJ Penn determined that Andretta had not engaged in substantial gainful activity from her application date of March 16, 2015, through the date of the decision.  (*Id.* at 17.)

At step two, ALJ Penn found that Andretta suffered from the "severe impairments" of bipolar disorder, depressive disorder, panic disorder, anxiety disorder, and attention-deficit hyperactivity disorder ("ADHD").  (*Id.*)  ALJ Penn also found that Andretta suffered from non-severe impairments of respiratory or cardiovascular disorders, and a substance abuse disorder in remission since February 2014.  (*Id.* at 17–18.)  Finally, ALJ Penn found that Andretta had mild limitations in understanding, remembering, or applying information, interacting with others, and concentrating, persisting, or maintaining pace.  (*Id.* at 18.)

At step three, ALJ Penn determined that Andretta did not have an impairment or combination that meets or medically equals one of the listed impairments in Appendix 1 of the regulations, 20 C.F.R. § 404.1520, Appendix 1 (20 C.F.R. §§ 416.920(d) and 416.926), although ALJ Penn considered listings 12.02, 12.04 and 12.06.  (*Id.* at 19–20.)  ALJ Penn found that Andretta would be capable of performing "a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can perform simple, routine and repetitive work."  (*Id.* at 20.)

At step four, ALJ Penn concluded that Andretta had no relevant prior work experience.  (*Id.* at 24.)

At step five ALJ Penn concluded that Andretta was capable of performing jobs that existed in significant numbers in the general economy.  (*Id.* at 24–25.)

Thus, ALJ Penn concluded that Andretta was not disabled within the meaning of the Act, as defined in 20 C.F.R. 416.920(g).  (*Id*. at 25–26.)

## STANDARD OF REVIEW

In reviewing the final determination of the Commissioner, a reviewing court does not determine *de novo* whether the claimant is disabled.  *See Schaal v. Apfel,* 134 F.3d 496, 501 (2d Cir. 1998).  Rather, it "may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error."  *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (quoting 42 U.S.C. § 405(g); *Bubnis v. Apfel*, 150 F.3d 177, 181 (2d Cir. 1998)).  "'[S]ubstantial evidence' . . . [is] 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  Where the Commissioner makes a

legal error, a "court cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the ALJ." *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984) (internal citation omitted). An ALJ's failure to apply the correct legal standards is grounds for reversal. *See Id.*

Federal regulations explicitly authorize a court reviewing decisions of the SSA to order further proceedings when appropriate. 42 U.S.C. § 405(g) ("The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."). Remand is warranted where "there are gaps in the administrative record or the ALJ has applied an improper legal standard." *Rosa*, 168 F.3d at 82–83 (quoting *Pratts*, 94 F.3d at 39) (internal quotation marks omitted). Remand is particularly appropriate where further findings or explanation will clarify the rationale for the ALJ's decision. *Pratts*, 94 F.3d at 39. However, if the record before the Court provides "persuasive proof of disability . . . a remand for further evidentiary proceedings would serve no purpose," the court may reverse and remand solely for the calculation and payment of benefits. *See, e.g.*, *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980); *Kane v. Astrue*, 942 F. Supp. 2d 301, 314 (E.D.N.Y. 2013).

## DISCUSSION

### I. Development of the Record

According to SSA regulations, the Commissioner must "make every reasonable effort" to assist the claimant in developing a "complete medical history." 20 C.F.R. § 404.1512(d). Furthermore, "[i]t is the rule in our circuit that the 'ALJ, unlike a judge in a trial, must [her]self affirmatively develop the record' in light of 'the essentially non-adversarial nature of a benefits proceeding.' This duty . . . exists even when . . . the claimant is represented by counsel."

6

*v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) (internal citations omitted). Thus, if the claimant's medical record is inadequate, it is "the ALJ's duty to seek additional information from the [treating physician] *sua sponte*." *Schaal*, 134 F.3d at 505; *see Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) ("[A]n ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record."). The ALJ's affirmative duty comports with this Circuit's observation that "the Social Security Act is remedial or beneficent in purpose, and, therefore, to be broadly construed and liberally applied." *Cutler v. Weinberger*, 516 F.2d 1282, 1285 (2d Cir. 1975) (internal quotation marks omitted). In other words, the Act's "intent is inclusion rather than exclusion." *Marcus v. Califano*, 615 F.2d 23, 29 (2d Cir. 1979).

In the instant case, ALJ Penn clearly advised Andretta that she did not need to submit any additional medical records, as ALJ Penn would be requesting them for her. (*Id.* at 63–64.) The records later submitted by the counsel Andretta retained for her appeal contained compelling findings. ALJ Penn erred in failing to request the pertinent medical records from Canarsie Aware, Canarsie Multi Service Center, and ICL, as each of these providers were clearly identified on the record as having provided mental health services to Andretta.

The Commissioner argues that the record was not clear that Andretta was identifying treatment sources. (Def.'s Cross Mot. (Doc. No. 16) at 15–17.) The Court disagrees. First, Andretta clearly stated that she began treatment at ICL when Canarsie Aware closed. (Tr. at 53.) Second, Canarsie Aware's records from September and October of 2014 were already in the record, and ALJ Penn discussed with Andretta whether she was helped by therapy and "talking to the psychiatrist." (*Id.* at 53.) ALJ Penn was aware, or should have been aware, that these were psychiatric facilities.[4]

---

[4] While it is noted that ALJ Penn appeared via video teleconference from Maryland and might not have been as familiar with ICL or other providers as ALJ's in the metropolitan hearing offices would have been, the record

ALJ Penn also failed to request Andretta's educational records and failed to question Andretta fully at the hearing regarding what ALJ Penn conceded was – in light of Andretta's testimony that she had been in special education – a "limited education." (*Id.* at 24, 47.) This too is an error on ALJ Penn's part.

Because the Court remands with the direction that ALJ Penn obtain Andretta's pertinent medical records, the Court suggests that ALJ Penn request Andretta's educational records if they are still available.

## II.    Treating Physician's Opinions

Andretta argues that because the record was undeveloped, ALJ Penn should have requested a medical source statement from the treating source. (Pl.'s Memorandum of Law in Support of her Motion for Judgment on the Pleadings (Doc. No. 17) at 9–11.) In this specific circumstance the Court agrees. The record raises questions regarding her diagnosis, as it clearly indicates that Andretta suffered from auditory hallucinations and was prescribed a powerful antipsychotic medication used to treat schizophrenia or schizoaffective disorder. (Tr. at 50–52.)

"The ALJ has an obligation to develop the record in light of the non-adversarial nature of the benefits proceedings, regardless of whether the claimant is represented by counsel." *Shaw*, 221 F.3d at 131. Thus, "an ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record." *Burgess*, 537 F.3d at 129 (quoting *Rosa*, 168 F.3d at 79). "[W]here . . . an ALJ concludes that the opinions or reports rendered by a claimant's treating physicians lack objective clinical findings, she may not reject the opinion as unsupported by objective medical evidence without taking affirmative steps to develop the

---

clearly indicated that psychiatric services were offered from Canarsie Aware and that ICL provided psychiatric services after Canarsie Aware closed.

record in this regard." *Rivas v. Barnhart*, No. 01-CV-3672 (RWS), 2005 WL 183139, at *23 (S.D.N.Y. Jan. 27, 2005).

The duty to develop the record is heightened when a claimant appears pro se before an administrative law judge. *Lamay v. Astrue*, 562 F.3d 503, 509 (2d Cir. 2009). The Commissioner of Social Security is not obligated to provide a claimant with counsel, but where a claimant proceeds pro se, the ALJ has a duty "to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Hankerson v. Harris*, 636 F.2d 893, 895 (2d Cir. 1980) (quoting *Gold v. Sec'y of Health, Educ. & Welfare*, 463 F.2d 38, 43 (2d Cir. 1972)); *accord Cruz v. Sullivan*, 912 F.2d 8, 11 (describing an ALJ's "heightened duty"). "[U]nlike a judge in a trial, [an ALJ] must . . . affirmatively develop the record [on behalf of the claimant]." *Lamay*, 562 F.3d at 508–09 (quoting *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999)). "In view of this heightened duty, the limited, yet clear, requirements for notification enacted by Congress seem both sensible and likely adequate." *Lamay*, 562 F.3d at 509. Specifically, an ALJ must "request medical source statements from a [claimant]'s treating sources . . . , regardless of whether [the] medical record otherwise appears complete." *Pettaway v. Colvin*, No. 12-CV-2914 (NGG), 2014 WL 2526617 at *5 (E.D.N.Y. June 4, 2014) (citation and internal quotation marks omitted).

Given the caselaw in this matter, ALJ Penn should have requested additional information from the specialist treating the claimant. The record was sparse, and indicated that Andretta was administered Paliperidone, a powerful anti-psychotic medication which is used exclusively to treat psychosis. (Tr. at 52.) Andretta also testified to experiencing auditory hallucinations. (*Id.* at 50–51.) It was noted by ALJ Penn herself that Andretta's testimony of lifelong mental health issues was consistent with her minimal and sporadic work history. (*Id.* at 22.)

9

The Court concedes that once Andretta's medical records from both Canarsie Aware and ICL are properly obtained, the record will likely be more complete and contain fewer gaps. The Court has remanded this case with the direction that ALJ Penn further develop the record. As the review of the record is limited to medical evidence previously obtained, the Court further directs ALJ Penn to obtain a medical source statement from Andretta's treating psychiatrist.

The Court declines to address Andretta's remaining arguments that the Appeals Council erred in not considering additional evidence and that ALJ Penn erred in assessing Andretta's credibility. As the case has been has remanded on the basis that ALJ Penn failed to obtain relevant medical records, Andretta's argument that the Appeals Council failed to consider additional evidence is moot. Additionally, ALJ Penn's assessment of Andretta's credibility may be altered when additional medical records are considered.

## CONCLUSION

For the reasons set forth herein, the Commissioner's cross-motion for judgment on the pleadings is denied, and Andretta's motion for judgment on the pleadings is granted to the extent it seeks remand. This matter is remanded for further proceedings consistent with this Order. The Clerk of Court is directed to enter judgment and close the case.

SO ORDERED.

Dated: Brooklyn, New York
       May 18, 2020

*Roslynn R. Mauskopf*
_____
ROSLYNN R. MAUSKOPF
Chief United States District Judge